UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
SHAMEEKA ANDERSON, individually and as Mother
and Natural Guardian of Z.A. (age 12), and BRENDA
ANDERSON,                                                                          14 CV 5759  (NG) (RML)

                    Plaintiffs,                                  SECOND AMENDED
                                                                                                      COMPLAINT
    -against-

THE CITY OF NEW YORK, DETECTIVES JAMES                     JURY TRIAL DEMANDED
WALSH (Shield 1303), and JEAN-BERNARD REMY
(Shield 2998), SGT. ERIC FRANCIS (Shield 1705), and
SUPERVISORY POLICE OFFICER JOHN DOE,

                    Defendants.
------------------------------------------------------------------------X

        Plaintiffs **SHAMEEKA ANDERSON,** individually and as Mother and Natural Guardian of **Z.A.** (age 12), and **BRENDA ANDERSON**, by their attorney, Joel Berger, Esq., for their second amended complaint allege, upon information and belief, as follows:

### *NATURE OF THE ACTION*

        1.      This is an action to recover money damages arising out of the violation of plaintiffs' rights under the Constitution and laws of the United States and the State of New York, including false arrest, false imprisonment, malicious prosecution and unnecessary and excessive use of force, by employees of the New York City Police Department (NYPD),

### *JURISDICTION AND VENUE*

        2.      This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988, and the First, Fourth, Fifth and Fourteenth Amendments to the Constitution of the United States.

        3.      The jurisdiction of this Court is predicated upon 28 U.S.C. §§ 1331 and 1343.

        4.      Venue is proper in this district pursuant to 28 U.S.C. § 1391 (b).

## *PENDENT JURISDICTION*

5. This Court also has jurisdiction over plaintiffs' state law claims, pursuant to its pendent or supplemental jurisdiction as codified in 28 U.S.C. § 1367.

6. On July 18, 2014, within ninety days after the claims alleged in this complaint arose, a verified Notice of Claim was duly served upon the Comptroller of the City of New York pursuant to General Municipal Law § 50-e.

7. On September 24, 2014, plaintiffs gave testimony at a hearing conducted pursuant to General Municipal Law Sec. 50-H.

8. At least thirty days have elapsed since the service of the Notice of Claim, and adjustment or payment of the claims has been neglected or refused by defendant City of New York.

9. This action is being commenced within one year and ninety days after the happening of the events upon which the claims are based.

## *JURY DEMAND*

10. Plaintiffs demand trial by jury in this action.

## *PARTIES*

11. Plaintiff Shameeka Anderson, age 34, an African-American woman, is a citizen of the United States and a resident of the State of New York.

12. Plaintiff Shameeka Anderson was several weeks pregnant at the time of the incidents alleges herein.

13. Plaintiff Shameeka Anderson miscarried approximately one week after the incidents alleged herein.

14. Plaintiff Shameeka Anderson has no criminal record of any kind.

2

15. Plaintiff Shameeka Anderson brings this lawsuit both individually and as Mother and Natural Guardian of Z.A.

16. Z.A., an African-American girl who lives with her mother, is a citizen of the United States and a resident of the State of New York.

.17. Z.A. was 11 years of age at the time of the incidents alleged herein. She is now 12 years of age.

17. Z.A. is a sixth grade special education student.

18. Z.A. has no criminal or juvenile record of any kind.

19. Plaintiff Brenda Anderson, age 51, an African-American woman, is a citizen of the United States and a resident of the State of New York.

20. Plaintiff Brenda Anderson suffers from diabetes, high blood pressure, a lung disorder and other ailments, all of which were exacerbated by the incidents alleged herein.

21. Plaintiff Brenda Anderson has never been convicted of any offense.

22. Defendant City of New York is a municipal corporation organized under the laws of the State of New York.

23. Defendant City of New York operates the NYPD, a department or agency of defendant City of New York responsible for the appointment, training, supervision, promotion and discipline of detectives, police officers and supervisory police officers, including the individually named defendants herein.

24. At all times relevant herein, defendant James Walsh, Shield 1303, was a detective

3

employed by the NYPD, assigned to Narcotics Borough Brooklyn North.

25. At all times relevant herein, defendant Jean-Bernard Remy, Shield 2998, was a detective employed by the NYPD, assigned to Narcotics Borough Brooklyn North. Remy is a tall African-American male who was wearing dreadlocks at the time of the incidents alleged herein.

26. At all times relevant herein, defendant Eric Francis, Shield 1705, was a sergeant employed by the NYPD, assigned to Narcotics Borough Brooklyn North. He is a Caucasian male and is taller than defendant James Walsh.

26a. At all times relevant herein, defendant John Doe was a supervisory police official employed by the NYPD, assigned to Narcotics Borough Brooklyn North or the 73rd Police Precinct. John Doe is a Caucasian male, tall, with a shiny bald head and dark hair around the bald top. He appears to be approximately in his 40's, and was wearing a white shirt indicative of a high rank.

27. At all times relevant herein, defendants James Walsh, Jean-Bernard Remy, Eric Francis and John Doe were acting as agents, servants and employees of defendant City of New York and the NYPD.

28. At all times relevant herein, all defendants were all acting under color of state law.

## FACTS

### SUMMARY

29. On May 7, 2014, at approximately 4:40 P.M., plaintiffs were in the vicinity of Pitkin Avenue between Osborne and Watkins Streets, in Brooklyn, New York.

30. On that date, at approximately that time and place, defendants Walsh, Remy and Francis engaged in a police action involving plaintiffs.

31. The police action involved the use of force by defendants against Brenda

Anderson, Z.A. and Shameeka Anderson.

32. The police action resulted in the arrest of Shameeka Anderson, with defendant Walsh as the arresting officer.

33. Brenda Anderson, Z.A. and Shameeka Anderson were all severely injured in their encounter with the police.

34. Defendant Walsh charged Shameeka Anderson with disorderly conduct and resisting arrest.

35. As a result of the arrest Shameeka Anderson was imprisoned for approximately 26-27 hours, first at the 73rd police precinct and then at Brooklyn Central Booking.

36. As a result of the arrest Shameeka Anderson had to make three appearances in Brooklyn Criminal Court, case docket number 2014KN033134.

37. The charges were dismissed on motion of the prosecution on August 13, 2014.

38. The prosecutor told the Court on August 13, 2014, that the ground for the dismissal was the inability of the prosecution to prove guilt beyond a reasonable doubt.

## *DETAILS*

39. On the date and approximate time of the incident Shameeka Anderson, Z.A. and Brenda Anderson had just left a church event.

40. They were accompanied by Kenon Armstrong, age 76, who has been Brenda Anderson's common-law husband for many years.

41. As they were waiting by a bus stop, Brenda Anderson was accosted by defendant Remy, who was dressed in plain clothes.

42. At no time did Remy state that he was a police officer or display a shield.

5

43. Remy accused Brenda Anderson being high on drugs and of having just obtained crack cocaine from Kenon Anderson.

43. Remy pushed Brenda Anderson up against a metal door and shoved her to the ground, causing severe injury.

44. Two Caucasian males in plain clothes, defendants Walsh and Francis, exited an unmarked vehicle and came to the scene.

45. At no time did Walsh or Francis state that they were police officers or display any shields.

46. Walsh stated that he had observed Kenon Armstrong selling crack cocaine to Brenda Anderson.

46. Walsh began pushing Brenda Anderson.

47. Z.A. observed the men in plain clothes accosting her grandmother and Kenon Armstrong, who she knows as her grandpa.

48. Z.A. went into a nearby deli, where her mother, Shameeka Anderson, had gone to purchase some snacks because Brenda Anderson's sugar level had been low and as a diabetic she needed to elevate her sugar level.

49. Shameeka Anderson exited the deli and asked defendants to leave her mother alone.

50. Defendant Walsh began cursing, spouting vulgarities and epithets, calling Shameeka Anderson a "fucking nigger" and a "bitch."

51. Shameeka Anderson pulled out her phone in an attempt to record what Walsh was saying.

52. Walsh then ordered Shameeka Anderson to turn around and handcuffed her.

53. Both Remy and Francis, recognizing that there had been no drug transaction and that there was no crack cocaine, advised Walsh to get in the car with them and leave the scene.

54. Walsh refused, complaining that "she blew our cover" and stating that "this bitch is going," or words to that effect.

55. Brenda Anderson remained on the ground, injured and screaming for defendants not to arrest her daughter.

56. In the course of the incident Walsh and/or Francis also shoved Z.A. to the ground, severely injuring her back, resulting in back pain that persists to this day.

57. Walsh handcuffed Shameeka Anderson very tightly, causing an injury to her right thumb that persists to this day.

58. Defendants called for a police van, and Shameeka Anderson was transported in the van for approximately 30 minutes, in handcuffs, until the van arrived at the 73rd precinct.

59. Shameeka Anderson was placed in a cell at the precinct where she remained for most of the next 7-8 hours, tightly handcuffed for approximately half of that time.

60. Shameeka Armstrong told defendants that she was several weeks pregnant and was experiencing abdominal pains and needed medical assistance.

61. Shameeka Anderson's requests for medical assistance were ignored.

62. At one point Shameeka Anderson was taken to an upstairs office in the precinct.

63. Shameeka Anderson was in such severe abdominal pain that she could not climb the stairs to the upstairs office and had to crawl up the steps while handcuffed. No one assisted her.

64. At the upstairs office Shameeka Anderson was questioned by defendant John Doe, a supervisory officer wearing a white shirt.

65. John Doe admitted that Shameeka Anderson had done nothing wrong, and offered to release her without any charges if she would agree to become a police informer and start informing the police about criminal activities in her neighborhood.

66. Shameeka Anderson stated that she was not privy to the kinds of information John Doe wanted and declined to become a police informer.

67. John Doe then accused Shameeka Anderson of "busting my balls" and stated that she would not even be released on a desk appearance ticket but would be put through the system and taken to central booking.

68. While Shameeka Anderson was at the 73rd precinct Brenda Anderson, Z.A. and approximately four family friends came to the precinct to inquire about her.

69. They were told by Walsh that Shameeka Anderson was no longer at the precinct, when in fact she was still there.

70. The police fabricated a charge of disorderly conduct (PL § 240.20 (3) (abusive or obscene language)) and resisting arrest against Shameeka Anderson, falsely claiming that she had been yelling and cursing when they were merely "conducting an interview" with her parents, Brenda Anderson and Kenon Armstrong.

71. Claimant Shameeka Armstrong was photographed and fingerprinted as an arrestee at the 73rd precinct.

72. Brenda Anderson was so sick from the incident that she had to be transported from the 73rd precinct by Emergency Medical Services to Brookdale Hospital, where it was determined

8

that both her blood pressure and sugar level were dangerously high.

73. In the early morning hours of May 8, 2014, Shameeka Anderson was transported in handcuffs to Brooklyn Central Booking.

74. Brenda Anderson went from Brookdale Hospital to Brooklyn Criminal Court to try to be of assistance to her daughter, but the case was not called in night court. She returned to Brooklyn Criminal Court the next morning, but the case was not called until approximately 6:30 – 7:30 P.M.

75. Shameeka Anderson was released on her own recognizance.

76. Shameeka Anderson had to appear in court again on June 26, 2014 and again on August 13, 2014.

77. At the time of the arrest defendant Walsh did not sign an accusatory instrument but rather had a paralegal of the Kings County District Attorney's office, Jennifer De La Cruz, submit a hearsay complaint.

78. Walsh did not bother to submit a supporting deposition until August 8, 2014 --91 days after the arrest.

79. On August 13, 2014, Kings County Assistant District Attorney Elizabeth Oren admitted that Walsh's supporting deposition was untimely.

80. However, ADA Oren did not move for dismissal on grounds of a violation of CPL Sec. 30.30.

81. ADA Oren moved for dismissal on the ground that "we cannot prove guilt beyond a reasonable doubt." Transcript of proceedings of August 13, 2014, Criminal Court, Kings County, Part AP-2 (Joanne Quinones, J.).

82. Approximately one week later, plaintiff Shameeka Anderson suffered a miscarriage due to the ordeal she experienced at the hands of defendants.

83. Shameeka Anderson still experiences severe pain in her right thumb as a result of her treatment by Walsh.

84. Z.A. still experiences severe back pain as a result of being shoved to the ground and landing on her back during the incident.

85. Brenda Anderson suffered bruises to her back and her legs were so weak that she had difficulty walking for several days.

86. Shameeka Anderson, Z.A. and Brenda Anderson were all severely traumatized emotionally as a result of the incident, and are extremely afraid of police officers.

87. Defendant Walsh was previously sued before this Court in the case of *Derrick Chapman v. The City of New York, et al.*, 13 CV 4748 (SJ) (JO), settled by the defendants on or about April 10, 2014, for the sum of $17,500.  The Amended Complaint in *Chapman* alleges that Walsh and another officer arrested Derrick Chapman on May 30, 2012 merely because Chapman had one-half of an Oxycodone pill in his pocket, and even after a friend brought a prescription bottle to the 73rd precinct proving that Chapman had a prescription for Oxycodone, Walsh and other officers refused to release Chapman, charged him with Criminal Possession of a Controlled Substance in the Seventh Degree (Penal Law § 220.03, a Class A misdemeanor, punishable by up to a year's imprisonment), and had him taken to Brooklyn Central Booking.  The Amended Complaint further states that on October 23, 2012, the charge was dismissed on motion of the prosecution, because Chapman had a prescription for Oxycodone (*People v. Chapman*, Criminal Court of the City of New York, Kings County, Docket # 2012KN044184).

10

88. Defendant Remy was previously sued before this Court in the case of *Maryetta Thomas v. The City of New York*, 12 CV 6272 (ARR) (VMS), a false arrest case settled by the defendants for $60,000 on December 11, 2013. The Complaint alleges that Remy was one of a group of officers who raided the 58 year-old Ms. Thomas's apartment, shot her 10-month old puppy, and arrested her on charges so baseless that the Kings County District Attorney's office declined prosecution.

89. Defendant Francis has been sued before this Court at least three times. In *Eric Rodriguez v. The City of New York*, 09 CV 5715 (RRM) (MDG), settled for $15,000, he is alleged to have participated in the false arrest of man with no prior police record whom he and other officers accosted on a Brooklyn street. In *Cameron v. The City of New York*, 13 CV 525 (ARR) (MDG), settled for an undisclosed sum on August 26, 2014, he is alleged to have participated in the false arrest and brutalization (requiring hospitalization) of a man who was harmlessly drinking an energy drink in front of the man's residence. In *Hugh Brown v. The City of New York*, 14 CV 5372 (BMC), a case still pending, he is alleged to have supervised and condoned yet another street false arrest in which the plaintiff was injured by officers under Francis's control.

11

### *FIRST CLAIM FOR RELIEF*

90. Plaintiffs repeat and reallege the allegations contained in ¶¶ 1-89.

91. Defendants, by their conduct toward plaintiffs alleged herein, violated plaintiffs' rights guaranteed by 42 U.S.C. § 1983, the First, Fourth, Fifth, and Fourteenth Amendments to the Constitution of the United States, and Article I, §§ 1, 5, 6, 11 and 12 of the Constitution of the State of New York.

### *SECOND CLAIM FOR RELIEF*

92. Plaintiffs repeat and reallege the allegations contained in ¶¶ 1-89 and 91.

93. The acts complained of herein are a direct and proximate result of the failure of the City of New York and the NYPD properly to select, train, supervise, promote and discipline detectives, police officers and supervisory officers.

94. The failure of the City of New York and the NYPD properly to select, train, supervise, promote and discipline detective, police officers and supervisory officers constitutes gross and deliberate indifference to unconstitutional conduct by those officers.

95. The official policies, practices and customs of the City of New York and the NYPD, alleged in ¶¶ 1-86, 88 and 90-91 violated plaintiff's rights guaranteed by 42 USC § 1983, the Fourth, Fifth, and Fourteenth Amendments to the Constitution of the United States, and Article I, §§ 1, 5, 6, 11 and 12 of the Constitution of the State of New York.

### *THIRD CLAIM FOR RELIEF*

96. Plaintiffs repeat and reallege the allegations contained in ¶¶ 1-89, 91, and 93-95.

97. The conduct toward plaintiff alleged herein constituted false arrest, false

12

imprisonment, malicious prosecution, assault, battery, and employee negligence.

98. The conduct toward plaintiffs alleged herein subjected plaintiffs to trauma, shock, debasement, shame, fright, fear, humiliation, embarrassment, loss of freedom, harassment, and physical, psychological and emotional injury, trauma, pain, and suffering.

### FOURTH CLAIM FOR RELIEF

99. Plaintiffs repeat and reallege the allegations contained in ¶¶ 1-89, 91, 93-95, and 97-98.

100. At all times relevant herein, the individual defendants were on duty and were acting within the scope of their employment as agents, servants and employees of the City of New York, which is therefore responsible for their conduct under common law, state law and Article I, §§ 1, 5, 6, 11 and 12 of the Constitution of the State of New York.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully request judgment against defendants as follows:

(a) Compensatory damages against all defendants, jointly and severally;

(b) Punitive damages against all individual defendants, jointly and severally;

(c) Reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988; and

(d) Such other and further relief as this Court deems just and proper.

Dated: New York, New York
December 5, 2014

/s/ Joel Berger
**JOEL BERGER**
360 Lexington Avenue, 16th Fl.
New York, New York 10017
(212) 687-1425

**ATTORNEY FOR PLAINTIFFS**

TO:  **ELISSA B. JACOBS, ESQ.**
  Assistant Corporation Counsel
  100 Church Street
  New York, NY 10007

14